Mr. McGarry, you're first.  Thank you. Good afternoon. Good afternoon. I'm Judge Dennis, and I'm sitting with Judge Higginson and Judge Costa, and we're here to hear your case, which is Johnny Pham v. TransAmerica Premier Life Insurance Company. Mr. McGarry, you're first. Thank you, Your Honor. May it please the court. I represent the father and two minor children of a woman by the name of Bic Pham, who was brutally murdered the day after TransAmerica Premier Life Insurance Company had approved her amended application for life insurance in the amount of $525,114. We contend that the appellants are entitled to benefits under a contract of temporary insurance called the conditional receipt. To be entitled to those benefits, we had to show four things. One, that the first premium was paid. Two, that the application and medical requirements were completed. Three, that the application was true as of the effective date of the conditional receipt. And four, that Bic Pham was insurable in the amount applied for on the effective date of the conditional receipt. The conditional receipt defines its effective date as the later of when the application was completed or when the medical requirements were completed. And the only dispute between the parties is one issue, and that is, when was the application completed? TransAmerica says that the application was completed on January 29, 2018, when the original application for $600,000 in benefits was submitted. We contend that the application was not complete until after it was amended to reduce the amount of benefits that were being applied for on February 26, 2018, when the application was Is it enough to just say the phrase completing all parts of the application is ambiguous and it's got to be construed in favor of the insured, hence to include amendment? Or do you have to go further? Well, Your Honor, it's important to remember that this is an appeal from a summary judgment. So we don't actually have to prove anything conclusively. We only have to show that there's a fact issue. And ambiguity would inherently create a fact issue. Are you arguing that that phrase is inherently ambiguous, hence fact issue? I am not. I'm just saying that if the court were to find it ambiguous, that we would prevail under that finding. But we do believe that it's not ambiguous and that an application is not completed until it's ready for education by the insurance company. So it's ready for a ruling. And the insurance company, in this case, approved the application only after Big Fam accepted an amendment that was proposed and submitted by the insurance company. Now, if your client, I mean, the deceased had signed the document they sent amendment to application, then I guess it would be incontrovertible. But she was dead by then. Your Honor, that document, the amendment to application was a document submitted with the completed policy after she died. It was not submitted to her while she was alive. That was a document that was part of the final policy. And when the final policy is issued, all of the application is attached to it, including other documents that the insured is supposed to sign to acknowledge her acceptance of the final policy. That unsigned document is really immaterial because it was something that had to be signed as part of accepting the final policy. And we're not claiming under the final policy. But you agree. I mean, just last quick question. If the effective date ends up being February 6, then she wouldn't be insurable for the amount applied for on that date. That's correct. OK. So it is just a simple it is over the effective date. And and their argument for why this this application was not amended boils down to the document attached to my record excerpts, which is called the numeric summary, which is a document that shows that the amount being applied for was being reduced from 600000 to 525 and that the premium was being reduced from 500 to 333. Their argument is that that document was insufficient to amend the application because it doesn't refer to the application. But I would pose to the court that that argument is itself disingenuous because that document that one page document, the numeric summary, is merely the signature page of a much longer document that is also in the record. The complete amendment to the application was a 28 page document. It appears in the record at pages 404 to 432. And it does expressly reference the original application and state that it's being amended. And that document was prepared and submitted by Transamerica, and they submitted it to the court where she signed the last page and returned the last page, which is why that one page is in the record excerpts, because that was the page that proved her acceptance of the amendment proposed by Transamerica. Now, the argument also ignores several of the things besides the fact that the amendment was a 28 page document and not a one page document. It also ignores the fact that there is deposition testimony from a woman by the name of Jennifer Hyde, who was Transamerica's representative handling this application. And she testifies in her deposition and admits that when BICFAM signed that document, that had been submitted to her, that that constituted an amendment to the application and that Transamerica accepted that amendment. They agreed that it was an amendment to the application. Also, what needs to be made clear is that there was really only one- Mr. McGarry, how do we treat that testimony you just quoted from the Transamerica rep? I mean, can we use that to find ambiguity? I mean, we confine to the policy language itself. Well, I'm going to suggest to you the court again, I don't think, you know, when the application was completed is ambiguous. I mean, the application is. Right. So then on your view, on your view, we wouldn't have to rely on that testimony. Well, but where I'm trying to figure out where in your view would that testimony come into our analysis? What what part of the analysis would be affected by that? Your Honor, because the test under Texas law for whether a contract has been amended is simply a meeting of the minds as to the intent of the parties. So not on when the application was complete, that issue, but on whether another on the amendment was agreed to. And there you can look on that issue. You can look at whatever. Go ahead. Three, two, that it was amended by virtue of the fact that it was agreed that the amendment was agreed to. And there was a meeting of the minds because, you know, trans-America, when they referenced this application, they used an application number and it was a long number, six, six, zero, zero, four, three, four, eight, four, four. And that's how they refer to this application consistently all through the process by number. And when they originally said that the original application would not meet their guidelines, they referred to it in the application by that number. When they amended the application or when parties agreed to them in the application, it references the application by that number. And when trans-America ultimately approved the application. They referred to the application again by the same number, it was the same application in different amounts from the beginning to end. And so it's a clear inference from that, that they had agreed to amend the application because the same application that didn't meet the requirements later did. And so obviously that is an inference that the application was amended by agreement. Now. I've already, I've already addressed the unsigned document that wasn't part of the application that was part of the completed policy. Trans-America's brief admits that it was submitted as part of the completed policy after Ms. Pham's death. It was part of something she was supposed to sign as part of accepting the final policy. And since we're not claiming under the final policy, we do believe that it's immaterial. What's material is what was the state of the application upon its approval? And it was approved on March 8th, 2018. What was the state of the application as of that date when trans-America approved it? Because they wouldn't have approved it if it wasn't complete. And the completed application that they approved could not have included that document because that document had never been submitted for signature until long after Ms. Pham's death. Now, I'd like to move on to my second and third issues raised in this appeal. Is it, before you do this, is it correct and useful to think of it as an offer, counter-offer acceptance or not? Yes, because Texas law is clear that insurance is a matter of contract. And you had a request for a contract in the original application, which was denied. And then another counter-offer with an amendment so that the application was for a lesser amount. And then that was accepted. So the contract really didn't exist until there was an acceptance on March 8th, 2018. And what was accepted at that time was an amended offer. And so, yes, that's exactly how it should be construed. It's a matter of contract. There was a request, counter-offer, counter-offer, acceptance. And that's the basis for our claim under the contract, temporary insurance. It is a contract. And the contract requirements, preconditions have to be met. But the question comes down to what are those requirements is that she was qualified, eligible for insurance benefits and the amount applied for when the application was complete. And it's clear just by reverse inference that if they accepted the application in the reduced amount, then the application couldn't have been complete until it sought that reduced amount. Because that was the offer that was ultimately accepted by the insurance company. Now, moving on, the statutory and tort claims. The district court only cited one reason for granting summary judgment on those. And that was citing the Texas Supreme Court's case in Texas Lloyds versus Menchaca. I think it's called Menchaca, but it's spelled Menchaca. And that Supreme Court case said that is a general rule that you can't proceed on the statutory and tort claims unless you also have a contract claim. And since the district court had denied the contract claim, that the other claims fell with it. And we agree that that's the general rule, which is why I made that second point conditional. If you don't grant the contractual relief, then the general rule would say that the other claims go away as well. But what the district court did not address is that the Menchaca case expressly contains an exception to the general rule, which we think there is evidence of in this case. And the exception is if the violation of statutory and common law duties causes the loss of the contractual benefit. And in which case you can have statutory and tort claims without having a contract claim. And simply by virtue of the fact that the district court did not address that possibility, we believe that the summary judgment defective and should be revanded so the court could consider that possibility. But we also believe that there is evidence in the summary judgment record that that exception applies because there is evidence. And it's evidence from a witness for Transamerica in handling that this claim, this policy, that on March 8, 2018, when they sent notice that the application had been approved, they should have sent the policy for signature, then, which would have allowed Big Fam to sign all those documents and accept the policy and have a contractual claim under the policy. But for inexplicable reasons, they waited three weeks to send out the policy. There is no reason given, nothing in the record about why there would have been a three week delay. And unfortunately, of course, Miss Fam was murdered in the meantime and could not accept her contractual rights on the policy, but due solely to a unexplained delay in sending the policy to her. And so I believe that falls under the exception of Manchac and would provide an independent basis for remanding the statutory and tort claims. But in summary, my request is that this court reverse the judgment of the district court in its entirety and remand the entire case back for trial of the merits. And I would give up the rest of my time. Miss Perkins. Good afternoon, Your Honors, may it please the court. Lucretia Perkins for Transamerica Life Insurance Company, the appellee in this case. Your Honor, the issues in this case, you know, you guys hit them right on point. It comes down to two questions. The first question being whether or not the numeric summary amended the insurance application so as to change the effective date from February 6, February 22, February 26. And Your Honor, we submit to you that that it that the numeric summary does not amend the does not amend the application for several reasons, several reasons. One, if you look at the application, the four corners of the document, it explicitly states the ways in which it may be amended. The document explicitly states that it is. It's included part one in part two. Part one is the the original application that was submitted by Miss Miss Pham at the top of it. It says express application part one. Part two is the the medical supplement that was submitted by my Miss Pham. It says at the top part it says medical supplement and it says part two. And then it says any other any other any other amendments or supplements are part of the application. Also, it says that an amendment must be in writing and it must be signed by a Transamerica president or vice president and a Transamerica secretary or assistant secretary. That's not the case in this with the numeric summary that was submitted in the record. Further, the numeric, the last page of the numeric summary where it has the signature, it does not state that it is an amendment to the application. It does not reference specifically the application or the conditional receipt or that it is an amendment to either of those documents. It explicitly states that it's a hypothetical illustration that it is not intended to predict any actual performance of the policy. And most importantly, lastly, most importantly, the intended amendment of the application was submitted with the policy. And I and I would submit to the to the record that you go back and you look at Miss High's deposition and look specifically at what she says. She says that she received that she received information from Miss Miss Kim, who was the insurance agent that that Miss Pham would accept an application, would accept a lower policy amount in the amount of five hundred and twenty five thousand dollars. So it was not your your Transamerica is taking the position that its phrase completing all parts of the application that would include an amendment. But you're denying that this was an amendment. Yes. OK. The actual amendment with the application, the actual amendment to the application was sent out with the policy. And just like the policy would not have taken effect until after it was the delivery was receipt was signed and submitted back to Transamerica. The application would not have been amended until it would have until the the amendment to application was signed by Miss Pham. And there's nothing in the record. Of course, she had passed away by then, but it was not signed. And it specifically identifies the two points in the application that were to be amendment to be amended. And it identifies itself as an amendment to the January twenty ninth application. And so, your honors, we said we submit that the actual effective date as of it under the conditional receipt is going to be February 6th, because that is the date that Miss Pham completed her medical examination. And so that's the date that that as of that date, she was not insurable for the six hundred thousand dollar policy amount that she had applied for. And we can also look at the explicit. There's no doubt that if the just if we find or the district court had found February 26 was the effective date, then the plaintiffs would be entitled to the benefits. Correct? Yes. Because as the the four corners of the documents is what guides this court's analysis. You look at the conditional receipt itself is the express language in that in that document is that it is to be construed as narrowly as possible. A conditional receipt is something that's offered as an incentive by any by an insurance company, not something that's required during that, during the and allows for temporary coverage during the underwriting time. During that time, Transamerica has no idea of the insurability of the of the applicant. And so there are specific requirements and conditions that must be met in order for that condition, that conditional receipt to take effect. So. So as to not only protect, they did ultimately confirm she was insurable. Yes. Yes. OK, so. So she's paid her premium and she's deemed insurable. And your client's just waiting for her respond and accept the lower coverage. Yes, your honor. And that and that that did not happen in this case. Your Transamerica never received the never received the the signed the signed amendment or the of course, the policy in this case. So there were there while Transamerica had determined that she was insurable. You distinguish Stansbury there. The signed amendment occur. Is that right? In Stansbury. Yes. So. Right. It was it was under. Oh, in Stansbury. The issue. It was undisputed on the face of the conditional receipt and the application that it could be amended by the insurance company. And so at that time, there was no in that case, there was no communication with the insured about the amendment to the to the amount of the insurance policy. The insured the insurance company did it on its own accord. And there was explicit language in there that in the conditional receipt that said that the insurance company could do that and it would be considered part of the application. And we don't have that language in the conditional receipt in this case. Your honors, the express language in the conditional receipt says that it should be construed as narrowly as possible. And just looking at Mr. McGarry admitted to this court that he does not see that the language is ambiguous and we don't see that it is ambiguous either. Mr. McGarry or appellants rely on Puckett in their in their briefing to say that insurance policy should be construed as strictly. They should be strictly construed in favor of the insured in order to avoid exclusion of coverage. And your honor, in that very next sentence, the Supreme Court of Texas says, but the rule does not apply. However, when the term in question is susceptible, if only one reasonable construction and IE, it's not ambiguous. And in this in this case, the language within the conditional receipt is not ambiguous. That the effective date is only the date that the application is completed or the date of the medical examination, which whichever was latter. And so we would submit to you that in this case, the effective date is February 6, 2018. And at that time, Miss Pham was not insurable in the amount, the six hundred thousand dollar amount that she had applied for. And your honor, if your honors are OK with, I'll go ahead and move on to my my second issue. But I'm happy to answer any questions you have. So under the second argument related to the extra extra contractual claims. First, your honor, that issue was not briefed in response to the the summary judgment that was submitted by Transamerica at the lower at the lower court level. And so we submit to we would submit that that issue has been waived for your honors consideration. But in the event that your honors are willing to entertain the extra contractual claims and whether or not there's a statutory violation, we will submit that there is absolutely no evidence in the record that Transamerica has committed any type of statutory violation. This would be there is no there is no record in any evidence in the record that Transamerica acted in bad faith. Just because that that Miss High testified that that Transamerica could or could have printed the application at that at, you know, on the same date. There is no record of course of dealing or or industry standards or anything that that would say that as soon as an amendment is made, it is impugnant on the insurance company to immediately, you know, amend and have the have the applicant sign the amendment right then and there. And that's what would have to have happened in this case in order for Miss Pham to have been to to have the application to have been amended in a date later than February 6, 2018. There is no evidence in the case that there in this case that there's any misrepresentations made by Transamerica. And in the application itself, it says that Transamerica has to act on or issue the policy within six days from the date of the application. The date was the date of the application was January 29, 2018, the date that the that the the ultimate policy amendment packet was sent to Miss Pham. It was March, March 20th to March 21st, but 21st, but it was within that 60 day period, approximately 50 days after Miss Pham had issued had initially issued her application. And so it was within that 60 day time period that that that that Transamerica had given itself. And Menchaca does stand for the general rule that the insured that an insured cannot recover on policy benefits as actual damages, absent of filing a finding of a statutory that cost that that contractual right to policies cause the insured not to have the contractual right to policies to benefits under the policy. And the exception that appellants rely on is the that even if an insurer cannot establish the present contractual right to policy benefits, which under my argument of earlier arguments as Transamerica stands here, that if the insured statutory violation caused the insured to lose that contractual right, then they could have actual damages under the insurance code. And I would just reiterate the argument that there is no nothing in the record by way of a statutory by way of evidence of a statutory violation by by Transamerica. And appellants haven't pointed to any cases that would suggest that by, you know, issuing the policy within 50 days or shorter or longer would constitute and a violation of industry violation of a statutory violation by Transamerica or any other insurance company. And your honor, I'd also like to point out to a couple other cases that that are cited in appellants briefs out the black case and the Robertson case. And I just wanted to make note that in both of those cases, the insurance company declined the proposed insured application for insurance after the insured had died. So there was an element of bad faith or good faith type of a situation in those cases that just that are not present here where Transamerica, while had determined that that that Miss Pham was insurable. It was not her ultimate application was not was not amended until would not have been amended until she had signed the amended application. And the policy, of course, would not have kicked in unless she had signed the policy. Neither of which neither of those things had had been done in this case. And my framework question to opposing counsel, she makes an offer. It's rejected. She makes a counter offer. It's it's accepted. Hence, application complete. The flaw in that thinking is what? Well, your honor, we I would I would submit that the actual that the actual contract would not be have wouldn't is was not completed until the policy was signed into the amendment of the application was signed. And when all once all of those documents were completed, that's when the parties have had a contract. Anything leading up in leading up to that was negotiations back and forth between the parties. But there was nothing to to bind either party to act or obligate either party to do anything until all of those documents. The final policy, the final policy, the delivery receipt and the amendment to application. Once all of those documents were were executed, that's when there was a contract. In this case, I disagree with opposing counsel's characterization that there was a contract and then counter offer and and otherwise, because that would mean that prior to even receiving the policy, if there was a contract, then there was an obligation on Transamerica to act. And that would not have been the case until the amendment to the amendment of the application and until the the policy was signed at that time. You know, they had their money. I'm sorry, your honor. Didn't they have her money? Yes. Insurance company. Yes, your honor. Miss BAM had paid the conditional. She had paid her conditional or her initial premium when she signed the conditional receipt. And so at that time she had applied for the six hundred thousand dollar policy amount. And when she when she submitted her application, she was not insurable for that six hundred thousand dollar policy amount. So so Transamerica did not have any obligation to to to act at that time. But they did. They told her that they would sell her a lower amount of insurance. And she accepted. Well, your honor, I would I would submit that that that was negotiations back and forth. And they may have come to, you know, an understanding that that five hundred and twenty five thousand dollars would be the amount of the ultimate policy. That in that that once that occurred in March, that nothing was actually a contract was not created between the parties until that amendment to application was written in writing, was in writing signed by Transamerica by the appropriate Transamerica representatives in order to create to create a contract at that time. OK. Well, your honor, if you have no further questions for me, for the foregoing reasons, the district court did not err in granting summary judgment for Transamerica because there is no question that as of that, Ms. Pham was not insurable for the for the amount that she applied for as of the effective date, which is February 6, 2018, as expressly required by the conditional receipt. And further, appellants waived their waived their right to challenge the district court's findings regarding the extra contractual claims because they did not brief that issue before the district court. And more moreover, they did not put forth any evidence in the court's record, factual, legal or otherwise, to support a finding that Transamerica committed a statutory violation. So in sum, your honors, Transamerica requests that you affirm the district court's denial dismissal of appellant's claims and award Transamerica any further relief that it is entitled to. Thank you. Thank you. So. I believe you have some rebuttal if you want it, Mr. That's your honor. Very briefly, when counsel says that there was no contract until the policy was signed and all the documents submitted with the policy, including that amended amendment to the application document until that was all signed is confusing two different contracts. I mean, it's true what she says that there was no contract under the policy itself until it was signed and until all those other documents were signed. But the conditional receipt is a completely separate contract of insurance from the policy. And the question before this court is, did that contract come into play? Was it, did it become effective? And they admit that an amendment to the application is part of the application and the application wouldn't be complete until the amendment was agreed to. But they deny. And again, just simply focused on the one page document entitled the numeric summary, again, focusing solely on that one page. They say that's not an amendment to the policy, but they seem to have ignored the point I made in opening that that was merely the signature page of a 28 page document that did constitute an amendment to the application. And it was an application, an amendment that was prepared and submitted by Transamerica. And all my client had to do was sign the last page to evidence for acceptance of that amendment. And so I think it's pretty clearly an amendment. And that would pretty clearly make the effective date February 26th when that amendment was. You say at least it raises an issue of fact. At least it raises an issue of fact that that's my only burden in this appeal is because this was a summary judgment. And then just very, very briefly addressing the tort and statutory claims. She misquoted Miss High, who was the Transamerica representative. And I think I may have put a typo in my brief about the records because she doesn't just say could have. She does say could have in terms of they could have issued the policy the same day that they approved the application. But she goes further than that. And I'm going to quote the record. At least one of the people at Transamerica says it should have issued. And that just really could have but should have issued back when Miss Pham was still alive. And that's located that quote is located at page 452 of the record. I think my brief says page 453, but but it's there. It says should have issued that policy should have issued while Miss Pham was still alive. And so that would be some evidence of a tort claim that could be remanded independently of the contract claims. But we are asking that the contract claims and tort claims be remanded in their entirety for final trial on the merits. That's all I have to hear. Case will be submitted. And we have one more case to be. Yes, yes.